UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CRYSTAL R. W.¹,<br><br>　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY,²<br>Commissioner of Social Security,<br><br>　　Defendant. | CASE NO. 3:22-CV-781-MGG |

**OPINION and ORDER**

Plaintiff Crystal R. W. ("Ms. W") seeks judicial review of the Social Security Commissioner's decision denying her application for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). This Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g). [*See* DE 9]. For the reasons discussed below, the decision of the Commissioner of the Social Security Administration ("SSA") must be reversed and remanded.

**I.　OVERVIEW OF THE CASE**

Ms. W applied for SSI on September 30, 2020. In her application, she alleged a disability onset date of March 1, 2012, which she subsequently amended to coincide with her application date—September 30, 2020. Ms. W's application was denied initially on February 17, 2021, and upon reconsideration on July 7, 2021. Ms. W filed a written

---

¹ To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
² Martin O'Malley was sworn into the office of Commissioner of Social Security on December 20, 2023, and he is substituted as Defendant is his official capacity as Commissioner.

request for hearing on July 20, 2021. Following a telephone hearing on December 15, 2021, the Administrative Law Judge ("ALJ") issued a decision on December 29, 2021, which affirmed the SSA's denial of benefits.

On July 13, 2022, the Appeals Council denied Ms. W's request for review of the ALJ's unfavorable decision, making the ALJ's decision the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Ms. W commenced this action challenging the decision pursuant to 42 U.S.C. § 405(g). Ms. W filed her opening brief on February 2, 2023, and the Commissioner filed his Memorandum in Support of Decision on March 16, 2023. This matter became ripe on March 30, 2023, when Ms. W filed her reply.

## II. APPLICABLE STANDARDS

### A. Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity ("SGA") is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB and SSI under the Act includes determinations of: (1) whether the claimant is engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the

claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based on her residual functional capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520; 416.920.[3] The claimant bears the burden of proof at every step except Step Five, where the burden shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

### B.   Standard of Review

This Court reviews disability decisions by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2007).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

---

[3] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

3

*Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Accordingly, at a minimum, the ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as he provides a glimpse into the reasoning behind his analysis to build the requisite "logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "The ALJ must confront the evidence that does not support his conclusion and support why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). An ALJ's decision will lack sufficient evidentiary support and require remand if the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596

F.3d 419, 425 (7th Cir. 2010); *see also* Wilson v. Colvin, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014).

**III. ANALYSIS**

**A. The ALJ's Decision**

Ms. W's telephone hearing before an ALJ took place on December 15, 2021. On December 29, 2021, the ALJ issued a written decision finding that Ms. W was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. §404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. The ALJ determined that Ms. W had not engaged in substantial gainful activity since her alleged onset date.

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ found that Ms. W suffers from the following severe impairments: degenerative disc disease of the cervical and lumbar spines, fibromyalgia, carpal tunnel syndrome, degenerative joint disease and impingement syndrome of the bilateral shoulders, chronic obstructive pulmonary disease (COPD), asthma, osteochondral defect of the right ankle, and obesity (20 C.F.R. 416.920(c)). [DE 13 at 21]. On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's

5

ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). Here, the ALJ found that Ms. W suffers from the non-severe impairments of diabetes, sinusitis, allergic rhinitis, tobacco abuse, high blood pressure, sleep apnea, gastroesophageal reflux disease (GERD), urticaria, vitamin D deficiency, nondurational peripheral venous insufficiency, ADHD, and unspecified depressive disorder. [DE 13 at 22].

At Step Three, the ALJ determined that none of Ms. W's severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at 24]. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. W can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ found that Ms. W has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but with certain additional limitations:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) as the claimant is able to lift and/or carry a maximum of 10 pounds with occasional lifting and carrying of lesser weights, and sit for six hours and stand and/or walk for two hours in an eight hour workday, except: the claimant must be allowed to stand at the worksite for two minutes after sitting for one hour; is able to stand or walk for up to 15 minutes at one time; is unable to climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; is unable to engage in constant neck motion; can occasionally reach overhead and frequently reach in all other directions; can frequently handle, finger, and feel with the bilateral upper extremities; must avoid concentrated exposure to temperature extremes, high humidity, vibration, and pulmonary irritants such as dust, fumes, odors, and gases; can have no concentrated exposure to hazards such as unprotected heights or dangerous moving machinery; and cannot operate a motorized vehicle as part of work duties.

[*Id.* at 26-27]. Given Ms. W was limited to less than the full range of sedentary work, at Step Four, the ALJ determined that she could not perform her past relevant work as a cashier, display trimmer, and personal care attendant. [*Id.* at 35]. Accordingly, the ALJ moved on to the last step in the five-step sequential analysis.

At Step Five, while the burden of proof shifts to the Commissioner, the Commissioner need only show that the claimant can perform some type of substantial gainful work existing in the national economy in significant numbers. 42 U.S.C. § 423(d)(2)(A). ALJs typically enlist a vocational expert ("VE") to testify about which occupations, if any, a claimant can perform. *See* S.S.R. 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). VEs use information from the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the VE, using the DOT, identified three jobs that Ms. W could still perform with her RFC—order clerk, document preparer, and lens inserter—which, respectively, have 51,000 jobs nationally, 41,800 jobs nationally, and 15,000 nationally (107,800 jobs total). [*Id.* at 36].

Finding that Ms. W could make an adjustment to other work that existed in significant numbers, the ALJ determined that Ms. W was not under a disability, as defined in the Act, from her alleged onset date of September 30, 2020, through the date of ALJ's decision on December 29, 2021.

B.     **Issues for Review**

Ms. W contends that the ALJ failed to support his decision with substantial evidence because the decision lacks an accurate and logical bridge between the ALJ's summary of the evidence and his conclusions. Likewise, Ms. W maintains that the ALJ failed to adequately explain how evidence showing "normal" findings was more persuasive than evidence suggesting disability. To illustrate these arguments, Ms. W alleges the following errors: (1) that the ALJ concluded Ms. W can perform sedentary work by impermissibly providing his own lay interpretation of medical evidence and without otherwise explaining how the RFC accounts for Ms. W's morbid obesity; (2) that the ALJ failed to explain how he concluded that Ms. W can sit for 1 hour and stand for 15 minutes at a time throughout the workday; (3) that the ALJ erred by failing to address why an elevation restriction was not included in the RFC; (4) that the ALJ failed to explain how the evidence shows that Ms. W retains an RFC for occasional overhead reaching and frequent reaching in all other directions; (5) that the ALJ failed to adequately accommodate Ms. W's limitations in concentration, persistence, maintaining pace, and time off task/absences; and (6) that the ALJ erred in assessing Ms. W's statements of her disabling symptoms and limitations.

8

In response, the Commissioner contends that the ALJ accurately summarized and considered the record, and Ms. W's arguments fail to demonstrate that the ALJ did not properly weigh the evidence or that record compels additional RFC limitations. Effectively characterizing Ms. W's opening brief as taking a "kitchen-sink approach" or "nitpicking," the Commissioner maintains the Court should affirm the ALJ's decision. [DE 19 at 1, citing *Burnam v. Colvin*, 525 F. App'x 461, 464 (7th Cir. 2013)].

Despite the ALJ's detailed summary of the evidence, the decision fails to adequately support and explain the ALJ's conclusions as to certain RFC limitations. *See John L. v. Saul*, No. 4:19CV18, 2020 WL 401887, at *12 (N.D. Ind. Jan. 23, 2020) ("the logical bridge is missing here because the ALJ simply did not grapple with much of the evidence in any meaningful way"); *see also Smith v. Astrue*, No. 09 C 6210, 2011 WL 722539, at *12 (N.D. Ill. Feb. 22, 2011) ("cataloguing [evidence from the record] is no substitute for analysis or explanation"). Although Ms. W contends that several issues require remand, the Court will only address three arguments involving interconnected issues. Finding that the ALJ's decision failed to adequately support that Ms. W retained an RFC for sedentary work, failed to adequately explain how Ms. W retained an RFC for occasional overhead reaching and frequent reaching in all other directions, failed to explain how she could stand or walk up for up to 15 minutes at a time, and failed to address Ms. W's obesity, remand is required.

**C.     Discussion**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR

9

96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the *most* someone "can do despite their mental and physical limitations." 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p.

When crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a). The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering a claimant's subjective statements and complaints related to their symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a).

10

The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4).

The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

As stated, Ms. W first contends that the ALJ did not explain how he determined that she retained an RFC for sedentary work. Ms. W explains that the ALJ rejected the State Agency medical consultants' opinions that Ms. W could perform light work due to other evidence added to the record. Ms. W contends that the ALJ then impermissibly reviewed this new medical evidence himself, decided it was outweighed by normal findings in the record, and rejected Ms. W's statements about the severity of her limitations—landing on a sedentary RFC determination. The Commissioner contends that the new evidence is not significant enough to require medical expert review and that other evidence supports the RFC.

The ALJ considered four medical opinions in the decision. First, the ALJ discussed two opinions rendered by Dr. Ehmen, M.D., who conducted consultative examinations in September 2019 and February 2021. In September 2019, Dr. Ehmen opined that Ms. W

> is able to communicate effectively and will not have difficulty maintaining focus and attention, that she is able to stand or walk for at least two hours in an eight hour workday, that she should be able to stand and walk up to 50% of time with regular stand/sit breaks during the house and walking shorter distances if not prolonged, is able to lift 10 pounds occasionally, under 10 pounds frequently and probably 10-20 pounds within the range of motion of her back and shoulders closer to the body, needs to alternate between sitting and standing as noted and is able to perform fine and gross movements effectively.

In February 2021, Dr. Ehmen opined that Ms. W

> is able to communicate effectively and will not have difficulty maintaining focus and attention, that she is able to stand or walk for at least two hours in an eight hour workday, that she is able to walk for short distances but not without interruption and can stand for short periods of time with breaks, that she is able to stand or walk for part of an eight hour workday with some sort of seated break intermittently, is able to lift over 10 pounds occasionally, under 10 pounds frequently and 10-20 pounds occasionally below shoulder level closer to her body, needs to frequently alternate between sitting and standing due to back and foot pain, is able to perform fine and gross movements effectively, pushing and pulling frequently with the upper extremities may be limiting, may need a cane for balance and is able to maintain good balance when using a cane and carrying less than 10 pounds with the unoccupied extremity.[4]

[DE 13 at 32-33]. The ALJ stated that "Dr. Ehmen's opinions are somewhat persuasive, as they are vague but generally consistent with a finding that the claimant is able to perform work at the sedentary exertional level due to neck, back and joint pain." [*Id.*].

The state agency medical consultants, Dr. Sands, M.D., and Dr. Eskonen, D.O.—whose opinions the ALJ rejected as unpersuasive—reviewed Ms. W's medical records. Dr. Sands opined Ms. W had an RFC for light work with certain additional limitations:

---

[4] Given Ms. W's amended onset date to September 30, 2020, the Court will primarily consider Dr. Ehmen's February 2021 opinion.

12

"the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, can sit, stand, and/or walk for six hours in an eight-hour workday, is unable to climb stairs, balance, stoop, kneel, crouch, or crawl." [DE 13 at 34]. On reconsideration, Dr. Eskonen found that there was insufficient evidence to evaluate Ms. W's physical impairments. [*Id*]. The ALJ stated that Dr. Sands' and Dr. Eskonen's opinions were "not persuasive" because "updated medical records received at the hearing level indicate that the claimant is more limited"—stating that these updated records indicated that Ms. W "continued to display antalgic movement, limited range of motion and tenderness of cervical and lumbar spine and numbness of her upper extremities and feet since undergoing neck surgery and carpal tunnel release, as well as obesity." [DE 13 at 34]. The ALJ then stated that, instead, Ms. W retained an RFC for sedentary work with other limitations.

The ALJ's treatment of the medical opinion evidence and resulting RFC determination raise multiple concerns. First, by discounting all four opinions—either in their entirety or in part—the ALJ generated an "evidentiary deficit." *Suide v. Astrue*, 371 F. App'x. 684, 689-90 (7th Cir. 2010); *see also Willis v. Acting Comm'r of Soc. Sec.*, No. 3:21-CV-178 JD, 2022 WL 2384031, at *4 (N.D. Ind. July 1, 2022) and *Tammy M. v. Saul*, No. 2:20CV285, 2021 WL 2451907, at *8 (N.D. Ind. June 16, 2021) ("Although the ALJ is not required to adopt a specific physician opinion, by not adopting any medical opinion, the ALJ faced an evidentiary deficit.") How the ALJ explained his RFC determination given this deficit is what the Court must review here. Addressing this deficit "by using [his] own lay opinions to fill evidentiary gaps in the record," *see Chase v. Astrue*, 458 F.

13

App'x 553, 557 (7th Cir. 2012), or by substituting his lay opinion for all other medical sources in the record requires remand. *Kara v. Kijakazi*, No. 20-CV-0344-BHL, 2022 WL 4245022, at *2 (E.D. Wis. Sept. 15, 2022). Put another way, "[a]lthough an ALJ is entitled to reject medical opinions and [the] 'RFC assessment is not required to match the opinion of at least one physician of record' [an ALJ] cannot pursue a Goldilocks approach by rejecting divergent opinions and simply splitting the difference between them to formulate an RFC that is 'just right.'" *Wanda E. v. Kijakazi*, No. 20 CV 2950, 2023 WL 2744734, at *8 (N.D. Ill. Mar. 31, 2023) (internal citations omitted).

    Arguments raised by Ms. W suggest that the ALJ filled evidentiary gaps himself and created a "middle ground RFC" here without evidentiary support. *Andrea H. v. Kijakazi*, No. 20 CV 1828, 2023 WL 2403138, at *4 (N.D. Ill. Mar. 8, 2023) (internal punctuation omitted). First, as stated, the ALJ rejected the state agency consultants' opinions that Ms. W can perform light work and instead found that Ms. W can perform a limited range of work sedentary work based on the additional evidence Ms. W presented at the hearing. "A claimant can do sedentary work if [s]he can (1) sit up for approximately six hours of an eight-hour workday, (2) do occasional lifting of objects up to ten pounds, and (3) occasionally walk or stand for no more than about two hours of an eight-hour workday." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1567. The ALJ found Dr. Ehmen's opinions to be "somewhat persuasive" because they were "generally consistent" with a finding of sedentary work. But the ALJ fails to explain which portions of Dr. Ehmen's opinions were persuasive or how they were consistent with a finding of sedentary work as assessed in the RFC. While the

Court can guess which portions may have been persuasive based on the statement from Dr. Ehmen that Ms. W can "stand or walk for at least two hours in an eight hour workday," this still leaves the Court to "speculate as to the basis for the RFC limitations." *See Moore*, 743 F.3d at 1128. But the Court is not permitted to speculate; instead, the ALJ must create a logical bridge for the Court to follow.

The ALJ otherwise failed to explain how he discounted the portions of Dr. Ehmen's opinions inconsistent with sedentary work or how the ALJ discounted the portions inconsistent with the other limitations assessed by the ALJ. For instance, Dr. Ehmen opined that Ms. W "can stand or walk for part of an eight hour workday with some sort of seated break intermittently." [DE 13 at 33]. Dr. Ehmen also stated that "she is able to walk for short distances but not without interruption and can stand for short periods of time with breaks." [*Id.*] He also stated that she "needs to frequently alternate between sitting and standing due to back and foot pain." [DE 13 at 33]. Moreover, as to Ms. W's reaching abilities, Dr. Ehmen stated that Ms. W "is able to perform fine and gross movements effectively, [but that] pushing and pulling frequently with the upper extremities may be limiting . . ." [DE 13 at 33].

Although Dr. Ehmen's opinion was "somewhat persuasive" the ALJ assessed an RFC untethered to any of these statements. Instead, the ALJ found that Ms. W can sit for one hour before needing to stand for two minutes, that she can "stand or walk for up to 15 minutes at one time" and that she can "occasionally reach overhead and frequently reach in all other directions." Moreover, when crafting these limitations, the ALJ fails to specify the evidence that supports his conclusions or otherwise explain how these

limitations accommodate Ms. W's limited range of motion, joint pain, and numbness here. *Andrea H.*, 2023 WL 2403138, at *4 ("At a minimum, the ALJ is required to provide adequate citation to the record in support of the RFC [he] constructed.") (internal quotation marks omitted). The lack of explanation on the reaching limitations is particularly problematic considering that other courts have found that "if a claimant is limited to a certain degree of motion, the ALJ does not appropriately accommodate the claimant by providing durational limitations"—which is precisely what the ALJ did here. *Stroud*, 2018 WL 4501674, at *4 (internal citations omitted). *See also Gaines v. Astrue*, 782 F. Supp. 2d 696, 701 (S.D. Ind. 2011) (finding that an "ALJ did not explain in his decision why he concluded that [the claimant] could stoop occasionally despite the limited lumbar forward flexion found by two physicians").

Thus, the Court can only find that the ALJ made the RFC determination by impermissibly playing doctor and "construct[ing] a middle ground [by] comi[ing] up with [his] own physical RFC assessment without logically connecting the evidence to the RFC findings." *Adelina M. v. Kijakazi*, No. 19 C 5294, 2022 WL 375554, at *8 (N.D. Ill. Feb. 8, 2022). And as "[t]he ALJ did not provide evidence to explain how he came to the RFC limitations, [] the creation of such middle ground without medical evidence to support his decision requires remand." *Pereida v. Saul*, No. 220CV00107RLMSLC, 2021 WL 327517 (N.D. Ind. Jan. 14, 2021), *report and recommendation adopted,* No. 2:20-CV-107 RLM-SLC, 2021 WL 327397 (N.D. Ind. Feb. 1, 2021).

These concerns link to another challenge raised by Ms. W—that the ALJ failed to adequately discuss the impact of Ms. W's obesity on her RFC. SSR 19-2p "provide[s]

16

guidance on how [the Commissioner] . . . evaluates obesity in disability claims." S.S.R. 19-2p, 2019 WL 2374244, at *1 (May 20, 2019). The ruling recognizes that "[p]eople with obesity have a higher risk for other impairments, and the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* at *2. SSR 19-2p also acknowledges that obesity "increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities." *Id.* at *4. Thus, an ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and "explain how he reached his conclusion on whether obesity causes any limitations." *Id.*

The ALJ found that Ms. W's obesity was a severe impairment at Step 2. But the ALJ then only mentions Ms. W's obesity in the RFC analysis by broadly including it in the list of accommodated impairments: "the undersigned finds that the claimant has the residual functional capacity to perform work at the sedentary exertional level due to a history of degenerative disc disease of the cervical and lumbar spines, fibromyalgia, carpal tunnel syndrome, degenerative joint disease and impingement syndrome of the bilateral shoulders, COPD, asthma, osteochondral defect of the right ankle and obesity." [DE 13 at 35].

The Court cannot find that the ALJ's generalized statement stating that Ms. W's obesity was accommodated by the RFC is an adequate explanation or discussion under SSR 19-2p. As stated, ALJ found Ms. W's obesity to be a severe impairment here. This finding means that Ms. W's obesity "significantly limits [her] physical or mental ability to do basic work activities . . ." 20 C.F.R. § 404.1520(c); *see also* SSR 19-2. Thus, the ALJ

17

needed to discuss "any functional limitations resulting from the obesity" and explain how he reached his conclusions when assessing the RFC. SSR 19-2p. This might include discussion of limitations in activities such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016). Thus, the ALJ's passing reference fails to assure the Court that the ALJ adequately considered whether Ms. W's obesity has any limiting effects here. *See Amor v. Kijakazi*, No. 3:22-cv-240-PPS, 2023 WL 1879441, at *4 (N.D. Ind. Feb. 10, 2023) ("A singular statement that the ALJ considered a claimant's obesity in the RFC determination is not enough to create the requisite logical bridge to the ALJ's conclusion.").

It is true that the ALJ's conclusory statements may be "harmless when the RFC is based on limitations identified by doctors who specifically noted obesity as a contributing factor to the exacerbation of other impairments." *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013). But neither the state agency medical consultants nor the consultative examiner [DE 13 at 84-94; 1528-1535] considered Ms. W's obesity as combined with her other impairments. Even if they had, the ALJ rejected these opinions either in whole or in part. The ALJ's chronological summary of the medical evidence included citation to three instances were medical providers recorded Ms. W's body mass index (BMI), revealing that Ms. W's BMI was recorded at 44.75 in June 2020, 44.9 in August 2020, and 42.43 in April 2021. [DE 13 at 28, 29, and 31]. But this evidence also fails to suggest whether her obesity was considered combined with other impairments. [DE 13 at 651 (BMI recorded at a post-operative visit); DE 13 at 842 (BMI recorded

18

during visit for follow up for diabetes type II); DE 13 at 1546 (BMI recorded during visit where Ms. W sought treatment for shoulder pain)]. Without more, the Court cannot find the ALJ's discussion of Ms. W's obesity sufficient here.

The Commissioner primarily disputes Ms. W's arguments by maintaining that she failed to demonstrate that "the record compelled additional limitations" or that she has otherwise failed to meet her burden "to show how the RFC is inadequate." [DE 19 at 1,6]. This response is unavailing. While the claimant must present evidence of any medically determinable impairments, the ALJ bears responsibility for crafting a claimant's RFC limitations. *See Robert P. v. Kijakazi*, No. 3:21CV305, 2022 WL 831870, at *10 (N.D. Ind. Mar. 21, 2022) ((explaining that the claimant was not required to "to furnish direct evidence that his impairments, for example, would allow him to sit specifically for one hour per day, or lift 10 pounds occasionally") (citing 20 C.F.R. § 404.1520 and 20 C.F.R. § 404.1513)). The ALJ's RFC assessment must build an accurate and logical bridge between the evidence and limitations included in the RFC. Without this, the Court is left to "speculate as to the basis for the RFC limitations" which it cannot do through its limited review. *See Moore,* 743 F.3d at 1128.

Ms. W has raised other issues in support of remand. The ALJ will have the opportunity to fully discuss and reevaluate these allegations on remand. This is not to say that there are no other errors in the ALJ's decision, but the Court need not discuss Ms. W's other arguments when errors have already been identified in the ALJ's decision. On remand, the Commissioner should consider all specifications of error before rendering a decision.

**IV.   Conclusion**

For the reasons stated above, this Court concludes that the ALJ's RFC analysis was not supported by substantial evidence. Accordingly, the Court now **REMANDS** this action to the SSA for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 28th day of March 2024.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge